CROWDER STATE BANK v. AMERICAN POWDER MILLS.

No. 4296. Opinion Filed April 27, 1915.

(148 Pac. 698.)

1. GUARANTY—"Guaranty to Pay"—"Guaranty to Collect." There is a clear distinction between a "guaranty to pay" a debt and one to "collect" it. The first is an absolute promise to pay the debt, while the second is a guaranty to use proper diligence to collect it.

2. GUARANTY—Promise of Bank—Guaranty to Pay Debt. A guaranty by a bank to hold the amount of a debt out of funds due the debtor when received by the bank becomes an absolute guaranty to pay the debt when funds of the debtor sufficient for that purpose are received by the bank.

3. GUARANTY—Action Against Bank—Burden of Proof. Where, upon such a guaranty, the plaintiff introduces evidence to show that sufficient funds have been received by the guarantor to pay the debt, the burden of proof is on the guarantor to show why he did not pay it.

4.    **EVIDENCE—Documentary Evidence—Identification—Sufficiency.** Where objection is made to the introduction of an instrument in evidence because it has not been identified, the testimony of a witness that he saw the instrument signed is sufficient.

5.    **NEW TRIAL—Refusal—Discretion.** Refusing to grant a new trial is largely in the discretion of the trial court, and where, under the guaranty above set out, the trial court charged the jury that the guarantor would not be liable, if the debtor owed it more than the money received, but there was no evidence as to how much the debtor owed the guarantor, there was no abuse of discretion in refusing a new trial.

(Syllabus by Devereaux. C.)

*Error from Superior Court, Pittsburg County;*

*Harry T. Kyle, Special Judge.*

Action by the American Powder Mills against the Crowder State Bank. Judgment for plaintiff, and defendant brings error. Affirmed.

The petition alleges, in substance: That during August, 1907, W. A. Lovejoy was engaged in certain revision work for the Missouri, Kansas & Texas Railway Company, near Crowder, Okla., and while engaged in this work the said Lovejoy purchased 700 kegs of blasting powder from the American Powder Mills. The order was sent in to the powder company by Lovejoy, and indorsed on the order was the following:

"We agree to hold the amount of this bill out of funds due Mr. Lovejoy when same is received by us. The Crowder State Bank, by J. B. Henderson, Cashier."

It further alleges that during the months of February and March, 1908, the Missouri, Kansas & Texas Railway Company issued checks to Lovejoy for work done by him on this extension work, aggregating $4,518.89, which were deposited by Lovejoy with the Crowder State Bank that this powder was shipped in pursuance of this order, relying on the indorsement of the bank, about the 23d day of December, 1907, that it was received by Lovejoy, and that at the time of shipment an invoice therefor was

sent to Lovejoy and a duplicate copy of the invoice to the bank; that on the 23d day of December, 1907, the powder company drew its draft on Lovejoy for $700, the amount of the invoice for the powder, and sent this draft to the defendant bank with a demand for payment. That this bill was not paid by the bank, although payment was often requested by it subsequent to the giving of the order and the receipt by it of the money from the Missouri, Kansas & Texas Railway Company for Lovejoy.

To this petition the defendant filed a demurrer: (1) That it did not state facts sufficient to constitute a cause of action against the defendant and in favor of the plaintiff; (2) that the petition shows upon its face that the contract or obligation sued on was *ultra vires,* as far as the bank is concerned, and wholly void. This demurrer was overruled and exception saved.

The evidence established the facts alleged in the petition, and the defendant introduced no evidence, but at the end of the plaintiff's evidence requested a verdict, which was refused and exception saved.

*Robert N. McMillen,* for plaintiff in error.

*Wright & Boyd,* for defendant in error.

DEVEREUX, C. (after stating the facts as above). We will consider the assignments of error as argued by the plaintiff in error in its brief, but it is well to say here that the second ground of the demurrer—that is, that the contract was *ultra vires*—has not been argued, and therefore is not considered.

The first and second assignments of error, which are argued together, are that the plaintiff's petition did not state facts sufficient to constitute a cause of action, and an objection to the introduction of evidence on the same ground was made, which, of course, presents the same question.

The plaintiff in error, in its brief, says:

"The case is for negligence or misconduct sounding in dam-

ages, and under all rules of pleadings the plaintiff must not only allege negligence, but also damages resulting proximately from such negligence."

These assignments of error are not well taken. The petition is not drawn on the theory that the bank negligently failed to collect a draft or note sent it for collection, but is founded upon the contract of guaranty. The guaranty from the bank upon which the powder company relied in shipping this powder was:

"We agree to hold the amount of this bill out of funds due Mr. Lovejoy when same is received by us."

The petition alleges this guaranty, and also that funds sufficient to pay the debt were received by the bank. This was not a guaranty by the bank to collect a debt for the powder company, but was a conditional guaranty of payment of the debt itself; that is, that when the bank received funds due Lovejoy sufficient to pay the $700 then the guaranty becomes absolute. The petition alleges that the bank did receive such funds, and therefore the guaranty became an absolute obligation on the bank to pay for this powder.

*Jones v. Ashford,* 79 N. C. 172, was an action on a guaranty for the payment of a note. In discussing this question the court say:

"In contracts of this kind the distinction between the guaranty of the payment of a note, and the guaranty for the collection of the note, or debt, is well marked out in books and adjudications on this subject. The former is an absolute promise to pay the debt at maturity if not paid by the principal debtor, and the guarantee may begin an action at once against the guarantor. The latter is a promise to pay the debt upon the condition that the guarantee shall diligently prosecute the principal debtor without success."

The distinction pointed out in this case applies to the case under consideration. This is not a guaranty to collect the debt, but a guaranty to pay it when sufficient funds belonging to Lovejoy should come into the hands of the bank, and, the peti-

tion having alleged that these funds did come into the hands of the bank, the guaranty became absolute.

The case of *Jefferson County Savings Bank v. Hendrix,* 147 Ala. 670, 39 South. 295, 1 L. R. A. (N. S.) 246, is not in point in this case. In that case a cashier's check had been deposited for collection, and the bank failed to use proper diligence to collect, and the payee bank later failed. This was not a case where there was a guaranty to pay a debt upon a condition subsequent, which was afterwards fulfilled. This case was purely that of a collecting agency which was to use due diligence in the collection of the check. The petition in that case failed to allege any damages on account of this negligence, and was held defective.

We think it clear that the petition in this case stated a cause of action, and the first and second assignments of error are overruled.

The third assignment of error is based upon the admission of the guaranty in evidence on the ground that there was not sufficient identification. This is answered by the evidence itself. In the deposition of Lovejoy, which was offered in evidence, the following questions were asked:

"Q. Mr. Lovejoy, at the bottom of the order, the original order which you have identified, are these words: 'We agree to hold the amount of this bill out of funds due Mr. Lovejoy when same is received by us. Crowder State Bank, by J. B. Henderson, Cashier.' I will ask you who wrote that portion of the order I have just read? A. Mr. Henderson wrote it. Q. Were you present when he wrote it? A. I was. Q. Do you know his signature? A. I do. Q. Is that the signature of J. B. Henderson? A. I think it is."

Again, the witness Wright swore positively that the paper offered in evidence was the original order signed by the bank to the powder company. This clearly identifies the order, and the objection to this testimony was properly overruled.

The fourth assignment of error is that the court erred in overruling defendant's demurrer to the plaintiff's evidence. The evidence, in brief, showed that the agreement from the bank to the powder company, to pay the bill out of the funds due Mr. Lovejoy when the same is received by it, was executed by the bank, and the powder was shipped by the powder company on the faith of this guaranty. The evidence further showed that a much larger sum than the amount of this bill was deposited by Lovejoy in the defendant bank, and the argument of the plaintiff in error is that the burden was on the powder company to show that the defendant has received sufficient funds due to Lovejoy to pay this bill, above what he owed the bank, before it made out its case. Lovejoy testified that when these deposits were made he owed the bank some amount, but was unable to state how much, and there was no evidence in the record as to what amount he did owe the bank, but the evidence does show that over $4,000 was placed to his credit and subject to his check. The defendant introduced no evidence as to what was due it by Lovejoy, or what application was made of this money. We think the plaintiff sufficiently established its case, when it showed that more than sufficient money to pay this debt was deposited by Lovejoy to his credit in the bank, and that the burden was then shifted to the bank to show what became of this money and to relieve itself from the burden it had assumed by its guaranty. The distinction must be kept in mind that this was not an action for negligently failing to collect a debt sent to the bank for collection, but there was a specific guaranty on the part of the bank to pay the powder company when it received money due from Lovejoy sufficient to pay the same. The evidence shows that sufficient money had been received to pay it. When this money was not used to pay the powder company, the burden was on the bank to show why. This was evidence peculiarly within the bank's knowledge and under its control, yet it introduced no evidence to show why it failed to pay this debt after the plaintiff had shown that it had received over $4,000 due Lovejoy and placed to his

credit in the bank. The cases cited by the plaintiff in its brief are of a different class of cases.

In *Allen v. Suydam,* 20 Wend. (N. Y.) 321, 32 Am. Dec. 555, a draft was indorsed over to an agent for collection, but he failed to take proper steps to fix the liability of parties second-arily liable thereon. Suit was brought against him for the full amount of the draft, and the lower court charged the jury, in substance, that since the jury had no knowledge of what the amount of the damage was, except from the proof of the amount of the draft, they should find a verdict for the plaintiff for the full amount of the draft with interest. This was reversed by the appellate court.

The distinction between that case and the case at bar is clear. That action was for negligence in failing to collect a draft; this action is on a guaranty of payment of a debt, and all of the cases cited by plaintiff in error on this point are of the same character. This rule, however, is by no means universal. See Daniel on Negotiable Instruments (3d Ed,) 329, and cases collected therein. However, it is not necessary for us to further review this class of cases, because the facts are essentially different. In brief, the class of cases cited by the plaintiff in error are for negligently failing to collect a draft or other debt sent to an agent for collection, but in the case at bar the action is on a guaranty to pay the debt absolutely upon the happening of a condition, which the evidence shows has happened. We therefore hold that this assign-ment of error should be overruled, and this, we think, covers the objections to the sixth, seventh, and eighth assignments of error.

The last assignment of error arises on the instructions of the court, which are as follows:

"You are instructed that, before plaintiff can recover in this case, it must prove by a preponderance of the evidence that money in the amount of plaintiff's bill, to wit, $700, came into the defendant's hands, and that said amount, when it came into defendant's hands, thereby became due to Mr. Lovejoy from the defendant.

"You are further instructed, in this connection, that any money placed in the bank's hands for the purpose of paying an indebtedness due the defendant bank from Mr. Lovejoy was not money coming into its hands due Mr. Lovejoy within the meaning of the foregoing instruction.

"You are further instructed that when Mr. Lovejoy paid money to, or placed money in the hands of, the defendant bank, the law allowed him to designate how that money should be applied, and, if the bank received any money with the understanding with Mr. Lovejoy that said money should be applied to Mr. Lovejoy's indebtedness to the bank, then the bank could apply it or use it in no other way."

These instructions were given by the court.

For the purpose of this opinion we will assume, but not decide, that this charge was correct. The objection is that the verdict of the jury is contrary to this charge, and therefore it should have been set aside and a new trial granted. We cannot agree with this. The court recognized the rights of the bank to deduct debts due it before any of these funds could be used to pay the plaintiff's demand, but there was evidence that over $4,000 had gone to the credit of Lovejoy in this bank after the guaranty was given. The bank has not shown, nor was there any evidence how much of this money was necessary to pay debts due the bank. Lovejoy testified that he owed the bank, but he could not say how much, and in this state of the evidence we do not think that it was an abuse of discretion of the trial judge to refuse to set aside the verdict.

We therefore recommend that the judgment below be affirmed.

By the Court: It is so ordered.