THE B&F CORPORATION v. CAVERS
2022 OK CIV APP 35
Case Number: 120024
Decided: 09/23/2022
Mandate Issued: 10/19/2022
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2022 OK CIV APP 35, __ P.3d __

 

THE B&F CORPORATION, d/b/a OK LOAN SERVICE, Plaintiff/Appellee,
v.
KELLIE C. CAVERS, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE TRENT PIPES, TRIAL JUDGE

AFFIRMED

Scott K. Suchy, CORPORATE COUNSEL, THE B&F CORPORATION, Oklahoma City, Oklahoma, for Plaintiff/Appellee

Victor R. Wandres, PARAMOUNT LAW, Tulsa, Oklahoma, for Defendant/Appellant

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 In this small claims proceeding, Kellie C. Cavers appeals from the trial court's order prohibiting her attorney-in-fact from appearing in the proceedings and from its order granting judgment to The B&F Corporation d/b/a OK Loan Service (Plaintiff). We affirm.

BACKGROUND

¶2 Plaintiff filed its Affidavit of small claims on December 18, 2020, in which it alleged Ms. Cavers was indebted to it in the amount of $198 because she failed to pay on a loan contract. Ms. Cavers was personally served on October 7, 2021. An Alias Affidavit dated September 17, 2021, was attached to the service of process as was an order informing Ms. Cavers that the matter was set to be heard in the small claims court on October 20, 2021.

¶3 Ms. Cavers appeared at the October 20 hearing.

¶4 Turning to the merits of the case, the court asked Ms. Cavers, "Do you wish to proceed? He can't act as your attorney." She answered, "Honestly, no," to which Mr. Suchy, counsel for Plaintiff, stated: "Your Honor, I move for a default. I have a contract signed by Ms. Cavers." Ms. Cavers stated: "Which that's on my credit report, if I'm not mistaken." At this point the court said:

If we're going to get into sworn testimony here, then I'll swear you in, I'll swear the parties in, and we can take testimony on it.

. . . .

. . . The reason for the requested continuance [was] because Mr. Dotson was not prepared. That is what [Mr. Dotson] alluded to. So his being prepared to proceed with this matter is of little consequence to the Court. So, anybody that is going to testify, raise your right hand.

(Parties sworn in.)

¶5 Mr. Suchy presented Ms. Cavers with a document titled "Loan Note" dated October 21, 2019. She agreed she signed that document and that it is the contract she had with Plaintiff. The following exchange occurred:

Mr. Suchy: . . . [A]nd in this contract do you agree to make a total amount of payment of $120, yes?
Ms. Cavers: No.
Mr. Suchy: So this is not the contract you signed?
Ms. Cavers: It wasn't for $120.
Mr. Suchy: Okay. What is your memory of it?
Ms. Cavers: I don't remember --

Ms. Cavers further testified she has made no payments on the loan because she lost her job. She testified she did not remember that she was obligated to make three payments of $40 each beginning November 2019 but did remember she would be charged a late fee of $26 if she missed a payment. Upon inquiry from the court, Ms. Cavers repeated that she was unable to make any payment because she lost her job and her house. However, in answer to the court's question, "But you don't deny the debt? I mean, it happened, you just couldn't pay it back?" she replied, "Yeah."

¶6 The court entered judgment for Plaintiff in the amount of $198 (the total of the loan amount and three late fee charges).

STANDARD OF REVIEW

¶7 To the extent this appeal concerns issues of constitutionally protected rights or of statutory interpretation, the issue is one of law that we review de novo. Troxell v. Okla. Dep't of Human Servs., 2013 OK 100318 P.3d 206Kluver v. Weatherford Hosp. Auth., 1993 OK 85859 P.2d 1081

¶8 The trial court's factual determinations and evidentiary rulings, however, are reviewed for an abuse of discretion. "An abuse of discretion occurs when a court bases its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling." Gowens v. Barstow, 2015 OK 85364 P.3d 644Curry v. Streater, 2009 OK 5213 P.3d 550

¶9 Ms. Cavers argues the trial court's findings regarding her indebtedness are erroneous because without a properly authenticated loan contract, there was no evidence in the record tending to support her indebtedness. "With respect to determinations of fact in a small claims proceeding, this Court's standard of review is that '[i]f there is any evidence tending to support the findings and judgment of the trial court . . . , the findings and judgment will not be disturbed, even if the record might support a conclusion different from that reached at nisi prius." Morris v. Behrens, 2021 OK CIV APP 35499 P.3d 39

ANALYSIS

I. Trial Court's Denial of Appearance of Attorney-in-fact

¶10 Ms. Cavers argues the trial court erred as a matter of law in its interpretation of several applicable statutes, and argues, in effect, the court's concept of what conduct constitutes the practice of law was an abuse of discretion. We disagree.

¶11 Oklahoma jurisprudence has long held that pro se litigants are held to the same standard as a licensed attorney and must comply with the same rules of procedure and evidence. Funnell v. Jones, 1985 OK 73737 P.2d 105See Black v. Littleton, 1975 OK CIV APP 1532 P.2d 486See also Thayer v. Phillips Petroleum Co., 1980 OK 95613 P.2d 1041Black Court:

It appears the intended purpose of the Small Claims Act was to establish an informal court, void of rigid restrictions with little or no regard to the technicalities pertaining to the rules of evidence, and the assumption by the judge of direct affirmative authority to control all aspects of a hearing with the sole object of dispensing speedy justice between the parties. This intent is evidenced by the fact that actions brought under the Small Claims Act, 12 O.S. 1971 § 1751 et seq., may be heard by any judge of the district court; the judgment is a judgment of the district court and appeals are taken directly to the Supreme Court.

1975 OK CIV APP 1

¶12 Ms. Cavers relies on an Attorney General (AG) Opinion in which the following question was posed: "May a person holding a Power of Attorney . . . appear on behalf of his or her principal as a party in small claims court without the assistance of legal counsel?" Question Submitted by: The Hon. Jerry L. Smith, State Senator, Dist. 39, 2003 OK AG 26Black, the AG Opinion examined the provisions of the Uniform Statutory Form Power of Attorney Act, 15 O.S. 2021 §§ 1001-1020.2003 OK AG 26R.J. Edwards, Inc. v. Hert, 1972 OK 151504 P.2d 407

¶13 As to small claims proceedings, the AG Opinion quotes 5 O.S., ch. 1, app. 1, art. II § 6, as follows:

In action filed and tried under the Small Claims Procedure Act (12 O.S. Supp. 1969, Section 1751 et seq.)

From this the AG Opinion then concludes:

Therefore, a person holding a Power of Attorney . . . may be authorized by his or her principal under 15 O.S. 2001, § 1005 . . . to appear as a substitute for the principal in small claims court and personally prosecute or defend the principal's case, and if he or she chooses, without the assistance of legal counsel. Further, a holder of a Power of Attorney . . . does not become a separate legal entity; rather, he or she holds powers delegated by the principal to an agent who must be a legal person. However, a person may not use a Power of Attorney . . . to substitute for a lawyer licensed by the Supreme Court of Oklahoma, when the services of an active member of the Oklahoma Bar Association are required. 5 O.S. 2001, ch. 1, app. 1, art. II, § 7. The determination of when services of a licensed lawyer are required is an issue of fact which cannot be answered in an Attorney General Opinion. 74 O.S. 2001, § 18(b)(A)(5).

2003 OK AG 26

¶14 As acknowledged by Ms. Cavers, "while a published Attorney General Opinion may be persuasive authority for a court, courts are not bound by the Opinion of the Attorney General." Edwards v. Bd. of Cnty. Comm'rs of Canadian Cnty., 2015 OK 58378 P.3d 54Oklahoma Public Employees Association v. State ex rel. Oklahoma Office of Personnel Management, 2011 OK 68267 P.3d 838

In analyzing the weight to be given to the Attorney General's opinion, we note that, like opinions of the Court of Criminal Appeals and the Court of Appeals, the writings are considered as persuasive authority. Here, however, the Attorney General's analysis carries more weight in determining the issues before the Court. It does so because the Legislature has not acted since the opinion was promulgated. Undoubtedly, it did not do so because it understood that this Court considers the Legislature's silence as acquiescence or approval of the law as expounded in an Attorney General opinion.

2011 OK 68Oklahoma Public Employees Association, we presume the Legislature's silence is acquiescence in or approval of the law as interpreted in that AG Opinion.

¶15 Nevertheless, even presuming the AG Opinion states a correct interpretation of §§ 1005 and 1014, that the attorney-in-fact may appear and defend in substitution for the principal in small claims court, the question remains whether the trial court abused its discretion and erroneously determined that the actions Mr. Dotson sought to undertake on behalf of Ms. Cavers crossed into the unlawful practice of law; that is, in determining that he was attempting to provide services that require a licensed attorney to provide.

¶16 Ms. Cavers argues small claims proceedings do not require the services of a licensed attorney and points to the AG Opinion in which it is stated: "a person may not use a Power of Attorney . . . to substitute for a lawyer licensed by the Supreme Court of Oklahoma, when the services of an active member of the Oklahoma Bar Association are required." Ms. Cavers argues the word "require[s]" is pivotal and is rendered meaningless if Mr. Dotson, as her attorney-in-fact, is not permitted to appear. We reject this narrow definition of "required" in this context. Rather, we conclude the requirement to be that when one undertakes to provide services to another that only a licensed attorney can provide, that person is providing legal services. R.J. Edwards, Inc., 1972 OK 151Id. ¶ 23 (citation omitted) (internal quotation marks omitted). Thus, it is the nature of the service the person is providing or attempting to provide, not the forum, that determines whether "the services of an active member of the Oklahoma Bar Association [are] required."

¶17 Mr. Dotson did not act as a substitute for Ms. Cavers. Ms. Cavers was present and nothing in the record indicates she was incompetent to proceed. Indeed, Mr. Dotson agreed he was "attempting to represent" Ms. Cavers and made it clear that Ms. Cavers told the court "she wants me to assist her in this matter."

MR. DOTSON: Let's clear it up. Okay. Yes. She was referencing me. And you asked me would, you know, would I let her directly talk to [Plaintiff's counsel], and I said no. And . . . plaintiff's attorney, continued to have communication with her, when I gave the proper documentation. And I want to put [the power of attorney] on the record.

Mr. Dotson went on, stating that "we [he and Ms. Cavers] was coming (sic) to the Court just to ask for a continuance"we was coming (sic) to the Court to ask for an extension and so we can go into discovery . . . ."

¶18 The court made the specific finding that the actions Mr. Dotson wished to take were the unauthorized practice of law because he wanted to represent Ms. Cavers,

¶19 Ms. Cavers further argues, however, that denying her the right to have her attorney-in-fact appear on her behalf is a denial "of her fundamental constitutional right to make decisions affecting litigation," thus implicating her due process right to "life, liberty, or property" under both the United States and Oklahoma Constitutions. Ms. Cavers also quotes from Towne v. Hubbard, 2000 OK 303 P.3d 154Id. ¶ 14 (footnote omitted). However, the full reasoning of the Court is as follows:

The right to the assistance of legal counsel includes the right to be represented by a legal practitioner of one's own choosing. In Powell v. Alabama, [287 U.S. 45 (1932)], the United States Supreme Court stated, "It is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." This right to select counsel without state interference is implied from the nature of the attorney-client relationship within the Anglo-American adversarial system of justice, wherein an attorney acts as the personal agent of the client and not of the state. It is also grounded in the due process right of an individual to make decisions affecting litigation placing his or her liberty at risk. Legal practitioners are not interchangeable commodities. Personal qualities and professional abilities differ from one attorney to another, making the choice of a legal practitioner critical both in terms of the quality of the attorney-client relationship and the type and skillfulness of the professional services to be rendered.

Id. (footnotes omitted). We agree that Ms. Cavers has a constitutionally protected due process right to be represented in court by an attorney of her choice; she does not, however, have a due process right to be represented by a non-lawyer. Ms. Cavers concedes that her due process and equal protection rights are not violated by the licensing requirements of the Oklahoma Supreme Court and its rules governing the Oklahoma Bar Association.

¶20 We also find unpersuasive Ms. Cavers' argument that her constitutionally protected right to equal protection of the laws was violated because that argument, too, is premised on her contention that legal services are not being rendered within the context of a small claims proceeding. While we will not speculate about hypothetical situations, we recognize there may indeed be instances where an agent, pursuant to a power of attorney, could appear as a substitute for the principal in a small claims proceeding. This case, however, does not present such a situation.

¶21 We conclude, under the facts of this case, the trial court's decision is not clearly against the weight of the evidence or contrary to a governing principle of law. Consequently, we further conclude the trial court did not abuse its discretion in prohibiting Mr. Dotson from representing Ms. Cavers in this case

II. Authentication of Loan Contract and Sufficiency of Evidence

¶22 Ms. Cavers argues the trial court abused its discretion in allowing Plaintiff's counsel to authenticate the loan contract and "[w]ithout a properly authenticated contract, there was not 'any evidence' in the record tending to support the finding that [she] was indebted to [Plaintiff] for the amount alleged or any other amount." She argues neither the testimony of Plaintiff's counsel nor her own testimony authenticates the contract. We disagree.

¶23 "Authentication may be defined as the act of giving legal authority to a written instrument or a certified copy thereof, so as to render it legally admissible into evidence." Concannon v. Hampton, 1978 OK 117584 P.2d 218Globe Automatic Sprinkler Co. v. Braniff, 1923 OK 178214 P. 127New v. State, 1988 OK CR 165760 P.2d 833Cf. Crowder State Bank v. Am. Powder Mills, 1915 OK 230148 P. 698

¶24 Contrary to Ms. Cavers' argument, she testified to more than merely the presence of her signature on the contract. She agreed that it was the contract she had with Plaintiff. While she testified the contract was not for $120, she did not remember what the amount was but she did not dispute the offered document was the contract she had with Plaintiff. The court admitted the contract "[Ms. Cavers] identified."

¶25 Despite Ms. Cavers' characterization of the evidence, we conclude the evidence was sufficient to support the trial court's finding that the loan contract was what Plaintiff claimed it to be. Further, Ms. Cavers' testimony supports the court's finding that she failed to make any of the payments or late charges required under the loan contract. We, therefore, conclude the trial court did not abuse its discretion in rendering judgment against Ms. Cavers for $198.

CONCLUSION

¶26 Based on the law and applicable facts, we conclude the trial court's determination that Ms. Cavers' attorney-in-fact sought to improperly represent her in this small claims proceeding was not contrary to a controlling principle of law nor clearly against the weight of the evidence; thus, the court's determination was not an abuse of discretion. We also conclude that Ms. Cavers' constitutionally protected rights to due process and equal protection of the law were not violated by the court's refusal to allow a non-attorney to represent her in this small claims court proceeding. We further conclude the court had sufficient evidence of identification and authentication of the loan contract at issue to allow its admission into evidence and its judgment for Plaintiff is supported by the evidence. Accordingly, we affirm.

¶27 AFFIRMED.

FISCHER, C.J., and HIXON, J., concur.

FOOTNOTES

See https://www.sos.ok.gov/gov/annualDistribution.aspx.

Id. § 7(c).

By executing a statutory power of attorney with respect to a subject listed in subsection A of Section 1 of this act, the principal, except as limited or extended by the principal in the power of attorney, empowers the agent, for that subject to:

. . . .

4. Prosecute, defend, submit to arbitration, settle, and propose or accept a compromise with respect to, a claim existing in favor of or against the principal or intervene in litigation relating to the claim[.]

In a statutory power of attorney, the language with respect to claims and litigation empowers the agent to:

1. Assert and prosecute before a court or administrative agency a claim, a cause of action, counterclaim, offset, and defend against an individual, a legal entity, or government, including suits to recover property or other thing of value, to recover damages sustained by the principal, to eliminate or modify tax liability, or to seek an injunction, specific performance, or other relief;

2. Bring an action to determine adverse claims, intervene in litigation, and act as amicus curiae;

3. In connection with litigation, procure an attachment, garnishment, libel, order of arrest, or other preliminary, provisional, or intermediate relief and use an available procedure to effect or satisfy a judgment, order, or decree;

4. In connection with litigation, perform any lawful act, including acceptance of tender, offer of judgment, admission of facts, submission of a controversy on an agreed statement of facts, consent to examination before trial, and binding the principal in litigation;

5. Submit to arbitration, settle, and propose or accept a compromise with respect to a claim or litigation;

6. Waive the issuance and service of process upon the principal, accept service of process, appear for the principal, designate persons upon whom process directed to the principal may be served, execute and file or deliver stipulations on the principal's behalf, verify pleadings, seek appellate review, procure and give surety and indemnity bonds, contract and pay for the preparation and printing of records and briefs, receive and execute and file or deliver a consent, waiver, release, confession of judgment, satisfaction of judgment, notice, agreement, or other instrument in connection with the prosecution, settlement, or defense of a claim or litigation;

7. Act for the principal with respect to bankruptcy or insolvency proceedings, whether voluntary or involuntary, concerning the principal or some other person, with respect to a reorganization proceeding, or a receivership or application for the appointment of a receiver or trustee which affects an interest of the principal in property or other thing of value; and

8. Pay a judgment against the principal or a settlement made in connection with litigation and receive and conserve money, or other thing of value paid in settlement of or as proceeds of a claim or litigation.

see, e.g., 12 O.S. Supp. 2019 § 1071, those amendments are not germane to the issues in the present case.

 non-attorney agents is already permitted in the case of business[] entities presumably because, in small claims court, that appearance does not require legal expertise and does not constitute the practice of law." She argues:

No Oklahoma Court has held that the employees of a corporation are allowed to engage in the unlicensed practice [of] law in small claims court. The practice is permissible because it is not the practice of law. Just as [Plaintiff] could have elected to appear through its non-attorney agent, [she] should have been permitted to appear through her non-attorney agent Mr. Dotson.

We disagree with Ms. Cavers' presumption and conclusion about what the meaning of the Supreme Court's rule allowing a non-attorney corporate employee or corporate officer to appear and represent the corporation in a small claims proceeding. There is no question that Ms. Cavers could appear on her own behalf in small claims court (or other courts) and represent herself in that proceeding. Article II, § 6 does no more than permit a corporation to do the same. It is axiomatic that a corporate entity, while a "person" in the eyes of the law, can only act through people. Article II, § 6 merely allows an avenue by which the corporate entity has the same ability as other persons to appear with or without an attorney in small claims proceedings. Consequently, assuming Ms. Cavers asserts this argument as a basis for her equal protection or due process claims, we find the argument unpersuasive.

Braniff Court stated:

It appears that counsel for the defendant assume that there is absolutely no testimony in the record justifying the inference that the letter testified about by the plaintiff was ever signed by any official of the defendant company with authority to make a contract. This contention is untenable. Considering the conversation between the agent of the defendant company and the plaintiff, the correspondence between them, and all of the circumstances surrounding the transaction, we are clearly of the opinion that the evidence was sufficient to justify the introduction of the plaintiff's testimony as to the contents of the letter.

Id. ¶ 7.

Q. Mr. Lovejoy, at the bottom of the order, the original order which you have identified, are these words: "We agree to hold the amount of this bill out of funds due Mr. Lovejoy when same is received by us. Crowder State Bank, by J. B. Henderson, Cashier." I will ask you who wrote that portion of the order I have just read? A. Mr. Henderson wrote it. Q. Were you present when he wrote it? A. I was. Q. Do you know his signature? A. I do. Q. Is that the signature of J. B. Henderson? A. I think it is.

1915 OK 230